BIRNBERG & ASSOCIATES
CORY A. BIRNBERG (SBN 105468)
703 Market Street Suite 600
San Francisco, California 94103
Telephone Number: (415) 398- 1040
Facsimile Number: (415) 398-2001

Barbara Norris (Ak. No. 8506070)
LAW OFFICES OF BARBARA NORRIS
645 W. Third Ave.
Anchorage Alaska 99501
Telephone Number: (907) 279-6621
Facsimile Number: (907) 279-0199

Attorneys for Defendants
Woodbine Alaska Fish Company,
and Guy Ferrari Inc.

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ALASKA**

| | |
|---|---|
| CITICAPITAL COMMERCIAL CORP, <br><br> Plaintiff, <br><br> v. <br><br> EGEGIK SPIRIT, official number 2999957, her equipment, gear, furniture, apparel, fixtures, tackle, boats, machinery, anchors and all appurtenances, in rem; <br> NAKNEK SPIRIT, official number 585824, her equipment, gear, furniture, apparel, fixtures, tackle, boats, machinery, anchors and all appurtenances, in rem; <br> WOODBINE ALASKA FISH CO., in personam; and GUY FERRARI, INC, in personam. <br><br> Defendants, <br><br>_____ | **Case No. A-04-0147 CI** <br> **IN ADMIRALTY** <br><br><br> **DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT** |

0

**I.   FACTUAL BACKGROUND**

Now comes Woodbine Alaska Fish Company (hereinafter "WAFCO") for itself, and on behalf of its vessel, the Egegik Spirit, and opposes the motion for summary judgment on its preferred ship mortgage as well as the counter claims for wrongful arrest.

Plaintiff argues that there were no recorded liens at the time of the attachment of the preferred ship mortgage but that is incorrect. Prior lien holders were Debis Financial Services, Inc. and Associates Commercial Corporation from whom Plaintiff CitiCapital acquired the loan.[1] It is just untrue that there were no prior preferred ship mortgages

WAFCO procured insurance 12 days after the arrest of the vessel and was in substantial compliance with the promissory note and preferred ship mortgage.  At the time of arrest, CitiCapital only requested that the vessel obtain insurance and it would release the vessels. CitiCapital indicated that payments should be made to bring the loan current but it was not a condition of the release of the vessels. Of the $500,000 note, WAFCO had paid the note down to about $334,000 and was in arrears on the note in the sum of $43,940.82.

WAFCO agreed to bring the promissory note current and obtain insurance - which was agreed by CitiCapital. Specifically, counsel for the Plaintiff agreed that if WAFCO obtained insurance the vessels would be released.  However, when WAFCO obtained insurance, Plaintiff did not release the vessels.  Because the income and profitability and ongoing business of WAFCO depended upon the functioning of the tenders in buying fish, once the tenders were arrested by Plaintiff, WAFCO could not buy any fish and was essentially out of business. WAFCO traditionally buys fish in Egegik and other areas in Bristol Bay in the end of July, August and early part of September.  Further, either based upon the surveys of the defendants, already on file in this action or the surveys produced by the Plaintiff, the arrest of one vessel was sufficient security for the default in the sum of $43,940.82. Such arrest was wrongful and in bad faith, as by agreement the note and security agreements had been modified by the verbal and written representations of Plaintiff and its counsel. As a result, WAFCO was

---

[1] Declaration of Mark Manning In Support of Summary Judgment Motion, page 10 & 11.

**DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

unable to complete the season and operate this last year, in 2005. The court summarily recommends that Defendant's opposition be disregarded in its entirety because, *sua sponte*, the agreements made and modification of the contract were settlement discussions under Federal Rules of Evidence 408 (hereinafter "FRE 408").

II. **THE COURT'S SUA SPONTE OBJECTION DISREGARDING DEFENDANT'S EVIDENCE OUT OF HAND IN RELIANCE OF FRE 408 SHOULD NOT BE APPLIED BECAUSE THE EVIDENCE DOES NOT GO TO LIABILITY ON THE PROMISSORY NOTE**

The court's argument is misplaced. FRE 408 is inapplicable in this case. Firstly, the defendant failed to raise FRE 408 as an objection, obviously believing that these discussions were not intended to reduce Woodbine's or Guy Ferrari's liability on the notes or settle a disputed claim. The courts' *sua sponte* invocation of FRE 408 was plainly an abuse of discretion.[2] Without objection, evidence is admitted, whether it is hearsay, compound or lacks foundation if counsel does not object. Plaintiff's counsel is experienced and capable of objecting and excluding evidence he thinks is inapplicable. When evidence is not objected to it is waived. FRE 408 states (as the court is aware):

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration **in compromising or attempting to compromise a claim** which **was disputed** as to either **validity or amount**, is not admissible to **prove liability for or invalidity of the claim or its amount**. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. **This rule also does not require exclusion when the evidence is offered for another purpose**, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. (emphasis added).

The evidence of the work out agreement and modification of the promissory note and the terms of payment were not to "prove liability or invalidity of the claim or its amount", the purpose is to show a workout agreement. The agreement did not dispute the validity of the promissory note or the liability thereof. The Woodbine-CitiCapital agreement did not deny liability for the amount of the loan, it did not change the amount of the loan, and it was not offered to prove liability or the invalidity of the claim. As the court notes, Defendants do not challenge the validity or authenticity of the promissory note and preferred ship mortgage. Defendants have not attempted to compromise CitiCapital's claim to a lesser amount or deny liability or admit liability for that

---

[2] It is difficult enough to practice law without having the judge of your case act as opposing counsel and adversary.

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

matter, but to show that an agreement was reached regarding insurance and an amount that would pick up the $43,000 in arrears and then extra payments to cover attorneys fees, arrest costs, and more pay down on the principal of the loan. This clearly is a modification agreement or forbearance agreement and could not reasonably be construed as evidence admissible to **prove liability for or invalidity of the claim or its amount**. Nor can it be construed as a misunderstanding of the law or of evidence.

Every forbearance or modification of a loan involves negotiation, and the fact that negotiation takes place does not make the agreement inadmissible under FRE 408.

The agreement to release to vessels in exchange for paying insurance was not covered by Evidence Code section 408 because it was not offered to prove the truth of the matters on which compromise had been reached. *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1413 (4th Cir. 1992).

The agreement to release to vessels in exchange for paying insurance was not covered by Evidence Code section 408 because there was no offer to dismiss the causes of action in the complaint or the counter claim or settle any of the issues with respect to the validity of the underlying agreement. In *Mendelovitz v. Adolph Coors Co.*, a letter from a distributor's president to a wholesaler offering to resume supply of beer for sale to his traditional local customers on condition that the wholesaler agree to refrain from making sales to persons or entities it has reason to believe will not maintain proper quality control did not constitute a settlement offer and was admissible in an antitrust suit brought by beer wholesaler against brewer and authorized distributor. *Mendelovitz v. Adolph Coors Co.* (5th Cir.1982) 693 F.2d 570, 1982-83 CCH Trade Cases P 65090, 12 Fed Rules Evid Serv 321.  The *Mendolovitz* court allowed this letter because "the letter does not compromise *Mendelovitz's* claim that Coor's policy of limiting distribution to fourteen Western states was unreasonable" Id. at 580. Likewise, here the agreements did not attack or compromise the amount of the promissory note, the authenticity of the preferred ship mortgage and does not diminish CitiCapital's overall claim on the promissory note or preferred ship mortgage; therefore Defendants arguments cannot be swept away *sua sponte* by the court on its own motion. Further, this *agreement* did not settle a dispute on any amount owing under the promissory note. Likewise a letter sent to an airline by a passenger requesting free tickets after an in-flight incident was not an offer to compromise his claims and was therefore admissible as evidence of his

BIRNBERG & ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

state of mind. *Timms* v. *United Airlines, Inc.*, 1993 U.S. App. Lexis 17489.[3] Defendants' *agreement* here should be admissible as to their reliance, as to their work out of the arrearages and work out regarding insurance. There is no doubt that Defendants' obtained insurance, and then also offered to meet the cash requirements which came up later. In order for a compromise to be inadmissible under FRE 408, the underlying claim must be disputed as to either validity or amount. *NMB Air Operations Corp. v. McEvoy*, 1999 U.S. App. LEXIS 22991 (9th Cir. 1999)[4], and in this case, there was no dispute at that time as to the validity of the obligation to CitiCapital, and the amount was not discussed. It was only about arrearages. The Supreme Court of Alaska has stated that Rule 408 providing that evidence relevant to a claim which was disputed as to either validity or amount is not admissible to prove that liability **does not** preclude admission of the evidence unless validity or amount of the **claim was in dispute at the time statements** sought to be admitted were made. *Statebank v. Kirschbaum*, 662 P.2d 939 (Alaska 1983), The Supreme Court of Alaska in *Statebank* stated:

> If a debtor concedes the validity of a creditor's claim and its amount, negotiations regarding the time and manner of repayment of the claim are not within the scope of Rule 408: An admission of liability made during negotiations concerning the time of payment and involving neither the validity nor the amount of the claim is not within the rule's exclusionary protection. (*citing* 2 J. Weinstein & M. Berger, Weinstein's Evidence para. 408[01], at 408-10 (1981) and 2 D. Louisell & C. Mueller, Federal Evidence § 170, at 271 (1978) ("Nor does [the Rule] require exclusion of evidence when neither liability nor amount is disputed"). *Alaska Statebank v. Kirschbaum*, 662 P.2d at 944.

In accord also is the Alaska exception (as is almost every jurisdiction) that the rule barring admission of an offer of compromise does not preclude such evidence where it is not introduced by one party to show an admission by an opponent but is introduced for another purpose. *Redman v. Department of Ed.*, 519 P.2d 760 (S. Ct. Alaska 1974). Alaska incorporates FRE 408 as its own, but the Federal Rules of Evidence are in accord, as in *Cohn v. Petsmart, Inc.*, 281 F.3d 837 (2002 9th Cir.), wherein the court held provision of Federal Rules of Evidence which prohibits the use of settlement letters to prove liability for or invalidity of the claim or its amount does not preclude settlement letters from being used for determining the amount in controversy for purposes of ascertaining jurisdiction. Of course, here, it is similar to an amount in recovery it is the amount and manner to cure the promissory note. Admiralty law is also in agreement *Zim Israel Navigation Co., Ltd. V. 3-D Imports, Inc*. 1999 AMC 1145, 1147, using the same language.

---

[3] This case is unpublished but it is offered as persuasive.
[4] This case is unpublished but it is offered as persuasive.

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

4
DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

Basically FRE 408 bars admission of settlement agreements to prove liability. Defendants admit that they are liable on the promissory note, that not all was paid on the promissory note, that the preferred ship mortgage is duly recorded and authentic, but argue that there was an agreement that if insurance was obtained, the vessels would be released, and then later if money were paid, in a certain sum, the vessels would be release, all of which Defendants agreed to comply with. The insurance was obtained within a week of when the vessels were arrested. Nowhere does this agreement have anything to do with proving or compromising liability. Further, they are excellent evidence of the Plaintiff's bad faith.

### III. THE EVIDENCE OF THE MODIFICATION IS ALSO ADMISSIBLE AS EVIDENCE OF BAD FAITH AND IS NOT EXCLUDED UNDER FRE 408

The work out agreement of obtaining insurance, and then later to pay the arrears and an additional sum is admissible to show the Plaintiff's bad faith as asserted in the counter claim. The complaint only alleged that $43,940.82 was owing. It was later amended to accelerate the promissory note and declare the whole amount owing, *after* the agreements had been reached with the Defendants. Clearly the agreements would be admissible to show the bad faith of the Plaintiff. In *Athey v Farmers Ins. Exch.*, an insured's settlement offer was admissible where it was offered to show that the insured attempted to condition settlement of breach of contract claim on a release of bad faith claim; the settlement offer was thus admissible as evidence of bad faith. *Athey v Farmers Ins. Exch.* (8th Cir. 2000) 234 F. 3d 357, 55 Fed Rules Evid Serv 1463.

Similarly, evidence concerning the negotiation of a settlement of a disputed claim for breach of an insurance contract would be admissible at trial, since it would *not* be offered to *prove liability* for *a claim or its amount* but, rather, evidence would be offered by plaintiff to support, and by defendant to negate, ***claims of bad faith on part of insurance carrier***. *Council for Nat'l Register of Health Service Providers in Psychology v American Home Assurance Co.* (1985, DC Dist Col) 632 F Supp 144, 19 Fed Rules Evid Serv 763.

### IV. IT WAS INAPPROPRIATE OF THE COURT TO INSERT ITS OWN OBJECTION OF THE EVIDENCE WHEN PLAINTIFF DID NOT OBJECT

Defendants submit it was inappropriate for the court to rule or place its own objections to the evidence when the plaintiffs did not object. A rule of evidence not invoked *is waived,* and hence waiver or estoppel to

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

make objections to the admission or exclusion of evidence may arise from the failure to object. The Plaintiff did not object but actually argue against or halfheartedly admitted the agreement. The emails submitted clearly indicate there was an agreement but Plaintiff backed out of it. Plaintiff's own emails confirm it. A rule of evidence not invoked is waived.[5] When a rule of evidence not invoked it is waived and hence a failure to object to evidence waives objections to its admissibility.  Likewise here, Plaintiff's failure to object to hearsay or secondary evidence, or settlement discussions constitutes a waiver of the right to object to its admissibility; such evidence may then be considered and given probative effect and a party may not subsequently upon appeal urge that such evidence was actually inadmissible. In other words, waiver or estoppel to make objections to the admission or exclusion of evidence may arise from the failure to object.[6] The **failure to object** to otherwise inadmissible evidence **waives** any objections the party might have had.[7] Similarly, a failure to object waives objections that the evidence introduced is not the best evidence,[8] and that it is hearsay or has probative value.[9] A failure to object likewise waives objections to evidence of declarations or admissions, and all questions of its competency.[10]

Defendants submit that its evidence of the modification of the agreement should be considered by this Court. Evidence submitted in connection with a motion for summary judgment, even though inadmissible in evidence at trial, may be properly considered in ruling on the motion where no objection is made.[11] Plaintiff made no objection under FRE 408, and the liability on the preferred ship mortgage, and the promissory note, as both the Plaintiff and the court has noted from Defendants' opposition, the agreement therefore can be offered

---

[5] *Allstate Ins. Co. v. Harms*, 21 Fed. Appx. 614, 2001 U.S. App. LEXIS 22547 (9th Cir., 2001); *United States v. Lazarus*, 425 F.2d 638, 1970 U.S. App. LEXIS 9750 (9th Cir., 1970) *Chivers v. Couch Motor Lines, Inc.,* 159 So. 2d 544 (La. Ct. App. 3d Cir. 1964); *Mound Rose Cornice & Sheet Metal Works, Inc. v. H. Kalicak Const. Co.,* 454 S.W.2d 603 (Mo. Ct. App. 1970); *Dunn v. Brookshire,* 8 N.C. App. 284, 174 S.E.2d 294 (1970)*; Baker v. Baker*, 60 Tenn. App. 545, 448 S.W.2d 677 (1969).

[6]  *Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1990 U.S. Dist. LEXIS 11392 (C.D. Cal., 1990).

[7] *Townsend v. Columbia Operations*, 667 F.2d 844, 849 (9th Cir. 1982).

[8] *Elster's Sales v. Longo*, 4 Cal. App. 3d 216, 223 (1970).

[9] *United States v. McCollum*, 802 F.2d 344 (1986 9th Cir.); *United States v. Arambula-Ruiz,* 987 F.2d 599, 1993 U.S. App. LEXIS 3425 (1993 9th Cir.).

[10] *Satariano v. Sleight*, 54 Cal. App. 2d 278 (Cal. Ct. App. 1942).

[11] *See Hess v. Multnomah County*, 211 F.R.D. 403, (2001 D. Or.),*Klingman v. National Indem*. Co. (1963, CA7 Wis) 317 F2d 850; *Mitchell v. Dooley Bros., Inc.* (1960, CA1 Mass) 286 F2d 40.

**DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

for only one purpose to show modification. Even if there was an objection by Plaintiff the evidence offered by the Defendants should be admitted. However, since there was none, it was waived and the court can consider otherwise inadmissible evidence and give it appropriate probative weight, just like hearsay evidence, best evidence, declarations, admissions, expert opinion, conclusions, manner and form of proof, foundation or parol evidence. Defendants respectfully request the court to consider their evidence.

V. **The Declarations Supporting Summary Judgment Were Deficient and Summary Judgment Cannot Not Be Made Based Upon It**

The only declaration upon personal knowledge was the declaration of Joseph Pitch and Darlene English, the latter of which was not in the moving papers but only in the reply. Darlene English only authenticated the preferred ship mortgages and some initial payments for security deposit and a letter "from the file" without foundation to Guy and Virginia Ferrari. The preferred ship mortgages are not in dispute. The declaration lacks foundation of a letter as to a business record. However, the main declaration in support is the declaration of Joseph Pitch who had no personal knowledge authenticating any of the documents submitted by Plaintiff,[i] and admitted to not having personal knowledge of how the interest was calculated.[ii]  Further, Rule 56(e) provides that when affidavits are used to support or oppose a summary-judgment motion, they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."[12] "Rule 56(e) permits the use of affidavits in support of or in opposition to a motion for summary judgment, but also requires that the facts stated in them be admissible in evidence upon a trial. Obviously then, it was incumbent upon the court to determine whether the proffered proof would be admissible in evidence..." (See Note 10, *supra*). Defendants have objected to the declaration of Joseph Pitch as inadequate and without personal knowledge. "Affidavits which are inadequate under Rule 56(e) must be disregarded."[13] Rule 56(e) "plainly requires (the word 'shall' being mandatory) that an affidavit state matters personally known to the affiant."[14] "When affidavits are offered in support of a motion for summary judgment, they must present admissible evidence, and must not only be

---

[12] *Paramount Pest Control Serv. v. United States* (9th Cir. 1962) 304 F.2d 115, 116-17.
[13] *G. D. Searle & Co. v. Chas. Pfizer & Co.*, C.A.7th, 1956, 231 F.2d 316, 318.
[14] *Jameson v. Jameson*, C.A.D.C.1949, 176 F.2d 58, 60.

BIRNBERG & ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

made on the personal knowledge of the affiant, but must show that the affiant possesses the knowledge asserted."[15]. As such, Plaintiff failed to establish its burden as to the amount owing and the interest charges, as Joseph Pitch had no idea how it was calculated and had no knowledge of the actual documents.

**VI.   THE SUBJECT PROMISSORY NOTE IS CONSTRUED UNDER THE LAWS OF TEXAS WHICH ALLOWS MODIFICATIONS, EXCLUSION OF EVIDENCE OF MODIFICATION (AS SETTLEMENT DISCUSSIONS) IS ERROR**

Paragraph 6.05 of the underlying mortgage agreement states: "**Applicable Law.**  This Mortgage shall be construed in accordance with, and the rights of the parties hereunder governed by, Chapter 313 of Title 46 of the United States Code and the general maritime law of the United States, to the extent applicable, and otherwise by the internal laws of the state of Texas."

The promissory note of the parties states that: "This Note shall be governed by and construed in accordance with the **laws of the State of Texas** and the applicable laws of the United States of America, including without limitation, 46 U.S.C. § 31322(b)." Pursuant to Texas law, parties to a contract have the power to modify their contracts. A valid modification must satisfy the elements of a contract: consideration and a meeting of the minds. *Rhoads Drilling Co. v. Allred* (1934) 70 S.W.2d 576, 583. Because each two element is satisfied in this case, there was a valid modification of the original mortgage agreement. "It is well settled in Texas that consideration may be given either by the promisee or by some other person to either the promisor or some other person…In addition, it is well settled in Texas that sufficient consideration for a contract may consist of either a benefit to the promisor or a detriment to the promisee."  *Hovas v. O'Brien* (1983) 654 S.W.2d 801, 802-3 (citations omitted, emphasis omitted).

In this case, Mark Manning, on behalf of Plaintiff, promised that they would not act pursuant to the contract provision relating to default if WAFCO obtained insurance. Virginia Ferrari, on behalf of WAFCO, paid for and obtained the required insurance. This constituted both a benefit to the promisor and a detriment to the promisee: Plaintiff had safeguarded its interest in the vessels through insurance, and WAFCO paid for the new insurance. This act of obtaining insurance therefore constituted consideration for Plaintiff's promise not to

---

[15] *Walling v. Fairmont Creamery Co.*, C.C.A.8th, 1943, 139 F.2d 318, 322. *Rolick v. Collins Pine Co.*, D.C.Pa.1989, 708 F.Supp. 111, 116, citing *Wright, Miller & Kane*, reversed on other grounds C.A.3d, 1991, 925 F.2d 661. *Brueggemeyer v. American Broadcasting Cos.*, D.C.Tex.1988, 684 F.Supp. 452, 463, *citing Wright, Miller & Kane.*

8

**DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

enforce its rights under the contract and permit WAFCO to continue operation. This agreement is not promising to compromise a claim which was disputed as to either validity or amount, and therefore not excludable under FRE 408,

    The second requirement for a valid modification is that there existed the same degree of mutuality and meeting of the minds as was present for the original contract. *Mandril v. Kasishke* (1981) 620 S.W.2d 238, 244. It is clear from the communications of the parties attached to the declaration of Cory A. Birnberg and Virginia Ferrari, incorporated herein by reference, that both parties intended to modify the contract to permit WAFCO to continue operating. Plaintiff would have no use for insurance and would not have agreed to permit WAFCO to obtain said insurance if it intended to sell the vessels. Moreover, WAFCO would not have obtained insurance, at a substantial cost to WAFCO, unless it intended to continue operations. WAFCO would not have obtained insurance if it knew or expected that Plaintiff was planning on selling the vessels. The conduct of the parties in negotiating for insurance, and permitting WAFCO to attempt to purchase this insurance, and WAFCO purchasing the insurance is demonstrative of the intention of the parties to modify the agreement to permit WAFCO to continue to operate both vessels if such insurance were successfully obtained.

The issue of whether a contract is modified depends on the parties' intentions and is a question of fact not settlement discussions under FRE 408. *Coastal Plains Development Corp. v. Tech-Can Corp.* (1975) 531 S.W.2d 143, 147. Because there is a genuine factual issue in dispute as to whether the parties intended to modify the original agreement, summary judgment should be denied.

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

## VII. CONCLUSION

For the foregoing reasons, DEFENDANTS respectfully requests that THE COURT RECONSIDER its recommendations and deny summary judgment.

Dated:   15 February 2006                             BIRNBERG & ASSOCIATES

                                                      By:   s/Cory Birnberg
                                                         Cory A. Birnberg

                                                      BIRNBERG & ASSOCIATES
                                                      CORY A. BIRNBERG   (SBN 105468)
                                                      703 Market Street Suite 600
                                                      San Francisco, California 94103
                                                      Telephone Number: (415) 398- 1040
                                                      Facsimile Number:  (415) 398-2001
                                                      Email:  birnberg@birnberg.com
                                                      California State Bar no. 105468
                                                      Attorneys for Defendants

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

10
**DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

1   APPENDIX I FROM JOSEPH PITCH DEPOSITION TAKEN September 21, 2005

2   [i] Mr. Pitch stated:

3   Q.   …first of all, is that your signature at the bottom of your declaration?

4   A.   Yes.

5   Q.   Okay. And you signed that November 16, 2004?

6   A.   Correct.

7   Q.   Okay. So what file were you referring to that reflects that there was a letter from John T. Carter?

8   A.   That would probably be the credit file or the legal file. I'm not sure which one it's in.

9   Q.   So my question was -- I thought you were familiar with that letter when I asked the
10  question. That's why I read and referenced that part to you because I asked you, Were there any
    other letters that were sent to the -- I call them the debtors or the obligors -- that they were
11  delinquent in their obligations to CitiCapital. And then there was an objection that he didn't
    write the letter, John T. Carter. So I read you that paragraph to refresh your recollection
12  because you say that there was a letter. So, is there any other letters, other than this letter, that
    you're aware of?
13
    A.   I'm not aware of any other letter that was sent other than the letter from John Carter.
14
    Q.   Do you know if it was received by Woodbine?
15
    A.   Right now, I don't recall.
16
    Q.   Okay. You don't know if you got -- it says certified.
17
    A.   Um-hum.
18
    Q.   I assume in Texas it's still the green card that you attach to the letter. You don't know if
19  you got that back?

20  A.   I don't know.

21  Q.   Do you know what address it was sent to?

22  A.   No, I don't.

23  Q.   Okay. Do you know what address that you normally corresponded with Woodbine and
    Guy Ferrari, Inc.?
24
    A.   No. That would have been the responsibility of John to correspond. I don't have that in
25  front of me.

26  Q.   Do you know how many different locations of business or addresses that Woodbine and
    Guy Ferrari, Inc., have?
27
28  A.   I know -- I believe they have a California address and Alaska address.

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

11
**DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING
RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

Q. What about Monroe? Did you correspond to a Monroe address?

A. (No response.)

Q. I need an answer.

A. I don't know. I don't know Monroe offhand.

Q. Okay. You never knew that the daily operations of Woodbine Alaska Fish Company were in Monroe since --

A. Monroe?

Q. Washington. Does that refresh your recollection?

A. Don't recall.

[31:6-33:4]

A. It's letter to fax to Lawrence Smith, Law Offices of Lawrence Smith, Fair Oaks, dated April 8, 2005. "Dear Mr. Smith, Guy Ferrari will pay adequate

protection in the monthly amount of the custodial fees, which are believed to be $3,000 per month, plus insurance, pending sale of the vessel by Dock Street Brokers. Guy Ferrari, Inc., will pay 50 up front retroactive to January 25 for the custodial fees. As actual expended, the custodial costs referred to in my March reflects to the custodial costs cited by you in your motion to relief from stay. You indicated the words custodial fees were too vague in our conversation today. However, they are defined in your motion for relief from stay as the monthly fees necessary to maintain the vessel. It is on

admiralty term. If you have any questions, please do not hesitate to contact our office".

Q. Okay. Now, my question is, Did you ever see that letter?

A. I don't recall offhand whether I've seen that or not.

Q. Okay. Who is Lawrence Smith?

A. I believe he is our attorney in California, representing CitiCapital.

Q. Okay. Do you know if John Carter ever received a copy of that letter?

A. I'm not sure because John Carter subsequently left the company, and I don't recall the date, whether it was April or May. So that would have either come to Mr. Carter or to Jeff Lamont, which would have -- which at the time was helping out John Carter on this account.

Q. Okay. Let me ask you this. Was the -- this offer, other than I asked you if you saw the letter, but was it ever communicated to you or, if you know, Jeff Lamont or John Carter?

A. I don't recall this letter specifically being communicated to me or John or Jeff.

[51:16-52:25]

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

12
DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

Q.   … in your declaration, you wrote that May 18, John Canter wrote and said that payments were not made -- well, he wrote on May 18th, but you stated that payments weren't made for February, March and April, and on the chart here we have two in February, one in March and two in April. So can you speak to that, if those are payments that were due for months before or can you tell?

A.   Just a second.

Q.   Okay. Take your time.

A.   This --

Q.   Referring to what?

A.   Hold on a second. I just mixed this up, which I want to do. I believe -- and I don't have the due dates. I don't have a report that shows me when those payments were due for what. But my understanding, from looking at the account, is that the April payments and the March payments and the February payments were for prior payments due. And that even after you get to the 4-29-04 payment, that paid the January installment, and not February, March and April. So the April 29th payment was applied to the January payment.

Q.   Okay. That's your understanding?

A.   That's my understanding.

Q.   But you don't have any documents that reflect -- or not that you have it. Is there any documents that reflect how they were applied?

A.   I'm just seeing if that shows that. This report does not show that.

Q.   Okay.

A.   I would have to see if I can get one that would show accurately payment received and for what date it was applied to.

Q.   I'm going to ask you to do that, too.

A.   Okay. I can do that, I think.

Q.   Okay. Let me ask you a quick question, and then I'll let you do your calculations.

A.   Okay.

Q.   The declaration that was filed with the summary judgment motion that we've been looking at, did you prepare that or was that prepared for you?

A.   That was prepared for me.

Q.   Okay. By your counsel?

A.   Yes.

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

13
**DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

Q. Okay. Do you recall doing anything to verify the information that was contained in there?

A. I did check on some of these items, and some of this was also checked on by John Carter. [72:3-74:1]

ii APPENDIX II FROM JOSEPH PITCH DEPOSITION TAKEN September 21, 2005

Q. Okay. Do you know how many payments were made -- well, do you know how many payments were made by Woodbine? How much?

A. How many were paid?

Q. Yes, how many were paid either in quantum amount or the number of payments?

A. I don't know how many they made without having a, you know, history account.

Q. Isn't that a contract, what you're looking at? A history of the account?

A. Well, this is not exactly -- this is a report that shows interest accrual, unpaid interest, principal balance. It does show dates that payments were made.

Q. It does show?

A. Well --

Q. It does or it doesn't or it sort of does?

A. (No response)

Q. You sighed there.

A. I'm not an expert on this system. But it showed --

Q. Is there another report that shows when payments were made that you have?

A. That's a little easier report to look at than this.

Q. What is the title of that report?

A. I'm not sure I know the exact title. Just a payment report.

Q. Okay. Is that something that's been generated in this case or it can be generated?

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

14
DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

A. It can be generated. This shows payments received, but it doesn't actually show the payment amount in a total amount. It shows the interest and the principal together. So you would have to combine the two to get to that amount on that date. So it is pretty convoluted. You have to go to a specific date, pick up the interest and the cash flow, add that together to get to a payment. So it's not readily apparent, like, here is payment X right down the line that matches this up without having to go through a little bit of a work.

MS. DENNIS: Can I stop just for a second, and we'll give you the time back. We'll go off the record.

(An off-the-record discussion was held.)
(At this time Ms. Dennis left the room.)

Q. (By Mr. Birnberg) You've had a conference with counsel, Mark Manning, and, I don't know, the record should reflect that Kim Dennis has left on an appointment. Do you think you can answer the question?

A. I'm not sure that this is accurate with this, unless I go through every one of those and validate them myself again or not again. But validate that this reflects this. I could do that if you like. If you want to give me about 20 minutes and give me a calculator, I'll go down and line by line and validate every one of those. But the contract -- this report is the accurate reflection of our record of payments with the company, with Woodbine, that we have received.

Q. Okay.

A. This is the report that shows the accurate data. If this matches up, great.

Q. One problem with your answer. I'm not being critical. "This" and "this." When we read it, we don't know.

A. Okay. The Contract Activity Report, I'm not sure matches up exactly with what Mark Manning sent you as an exhibit to a September 2 data unless I validate each one and go down line by line, which I'm willing to do if you want me to take 20 minutes and get a calculator, and I'll go line by line and match up each payment. If that's what you want, that's fine. Or if there's a specific -- if there was a specific one that you want to look at, I'll be happy to match it up to that and validate it, if there's a dollar -- if there's a payment date that's a discrepancy.

MR. BIRNBERG: Okay. I'm going to attach, first of all, as Exhibit 3 -- that's my only copy of the Contract Activity Report. You can fax them back to me, the exhibits or FedEx them or whatever or we can make a copy here. Attach it as Exhibit 3 and attach the September 2nd letter as Exhibit 4.

(Exhibits 3 and 4 were marked.)

Q. (By Mr. Birnberg) The point of the question is -- and that's why I was asking if there's another payment history report. I'm trying to verify what Woodbine and Guy Ferrari, Inc., paid on the note.

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

15
**DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

A. Um-hum.

Q. And I understand that the Contract Activity Report, it shows a payment. But then, depending on what the interest rate is at the time of the payment, they divide it up into principal and interest; is that correct?

A. Yeah. On the Contract Activity Report, shows the interest payment made and deducts out the principal portion as opposed to showing a date and one payment made. Because the check is -- you know, the amount comes in as one lump sum, and it gets allocated to principal and interest. That's what this report shows. So I would have to add the two columns together on that date and go down line by line to match this up.

Q. Okay. Is it possible to ask a clinician or clerk to run the payment history report? And then we can continue on.

A. I would guess, if somebody's available to run that, sure.

Q. If that's all right, I would like to maybe ask to see if somebody's available, and we will continue on.

A. Give me a minute and let me go check.

Q. All right.

(A break was held from 11:28 to 11:34.)

MR. BIRNBERG: Mr. Pitch just came back in.

THE WITNESS: Okay.

Q. (By Mr. Birnberg) And you brought a document with you?

A. Yeah. We ran an Amortization of Scheduled Payments Received, which is a little bit easier report to validate each one of these payments. So if you like, I can go down and just -- if you'll give me about ten minutes, I'll go down and validate each one of these.

Q. Okay. You've only got one copy of it?

A. Yeah, and you can have it after I'm done.

Q. Okay. That's fine. I want to ask you. You're going to go through and validate against the September 2nd letter, I guess, that chart?

A. Yes, if you want me to.

BIRNBERG & ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

16
**DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

Q. Yes, I do. Let me ask you a few preliminary questions. Using the three documents that you have -- the Contract Activity Report, the Amortization of Scheduled Payments, and Mark's September 2nd letter -- can you tell if February payments were made or March because in his chart, he shows two payments in February.

A. So we're talking about '04?

Q. Yeah. Shows two payments in February. Shows a payment in March. Shows a payment in April. Another one in April.

A. Correct.

Q. And this letter where you said that -- in your declaration, you wrote that May 18, John Canter wrote and said that payments were not made -- well, he wrote on May 18th, but you stated that payments weren't made for February, March and April, and on the chart here we have two in February, one in March and two in April. So can you speak to that, if those are payments that were due for months before or can you tell?

A. Just a second.

Q. Okay. Take your time.

A. This --

Q. Referring to what?

A. Hold on a second. I just mixed this up, which I didn't want to do.

 I believe -- and I don't have the due dates. I don't have a report that shows me when those payments were due for what. But my understanding, from looking at the account, is that the April payments and the March payments and the February payments were for prior payments due. And that even after you get to the 4-29-04 payment, that paid the January installment, and not February, March and April. So the April 29th payment was applied to the January payment.

Q. Okay. That's your understanding?

A. That's my understanding.

Q. But you don't have any documents that reflect -- or not that you have it. Is there any documents that reflect how they were applied?

A. I'm just seeing if that shows that. This report does not show that.

Q. Okay.

BIRNBERG & ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

17
**DEFENDANTS AND CROSS-COMPLAINANTS OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES CONTESTING RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

1  A.   I would have to see if I can get one that would show accurately payment received and
2  for what date it was applied to.

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001