| | |
|---|---|
| 1 | BIRNBERG & ASSOCIATES |
| | CORY A. BIRNBERG (SBN 105468) |
| 2 | 703 Market Street Suite 600 |
| | San Francisco, California 94103 |
| 3 | Telephone Number: (415) 398-1040 |
| | Facsimile Number: (415) 398-2001 |
| 4 | |
| | Barbara Norris (Ak. No. 8506070) |
| 5 | LAW OFFICES OF BARBARA NORRIS |
| | 645 W. Third Ave. |
| 6 | Anchorage Alaska 99501 |
| | Telephone Number: (907) 279-6621 |
| 7 | Facsimile Number: (907) 279-0199 |
| 8 | Attorneys for Defendants |
| | Woodbine Alaska Fish Company, |
| 9 | and Guy Ferrari Inc. |

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF ALASKA

| | | |
|---|---|---|
| CITICAPITAL COMMERCIAL CORP, | ) | **Case No. A-04-0147 CI** |
| | ) | **IN ADMIRALTY** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **FIRST AMENDED COUNTER** |
| | ) | **CLAIM OF WOODBINE** |
| EGEGIK SPIRIT, official number 2999957, | ) | **ALASKA FISH CO., AND GUY** |
| her equipment, gear, furniture, apparel, | ) | **FERRARI INC.** |
| fixtures, tackle, boats, machinery, anchors | ) | |
| and all appurtenances, in rem; | ) | |
| NAKNEK SPIRIT, official number 585824, | ) | |
| her equipment, gear, furniture, apparel, | ) | |
| fixtures, tackle, boats, machinery, anchors | ) | |
| and all appurtenances, in rem; | ) | |
| WOODBINE ALASKA FISH CO., | ) | |
| in personam; and GUY FERRARI, INC, | ) | |
| in personam. | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |
| WOODBINE ALASKA FISH CO., | ) | |
| in personam; and GUY FERRARI, INC, | ) | |
| in personam. | ) | |
| | ) | |
| Cross-Complainant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITICAPITAL COMMERCIAL CORP | ) | |
| | ) | |
| Cross-Defendant | ) | |
| | ) | |

FIRST AMENDED COUNTERCLAIM

-1-                                                              Case No. A-04-0147-CI

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

## COUNTERCLAIM

Cross-Complainant WOODBINE ALASKA FISH COMPANY, INC. and GUY FERRARI, INC. allege against CITICAPITAL COMMERCIAL CORP., as follows:

## FACTUAL ALLEGATIONS

1. Cross-Complainant WOODBINE ALASKA FISH COMPANY, INC (hereinafter "Woodbine") is and at all times relevant herein mentioned was an Alaskan Corporation.

2. Cross-Complainant GUY FERRARI, INC. (hereinafter "GFI") is and at all times relevant herein was a California corporation doing business in the State of Alaska.

3. Cross-Defendant CITICAPITAL COMMERCIAL CORP. (hereinafter "CitiCapital") is and at all times relevant herein mentioned was a corporation organized and existing under the laws of the State of Texas and has voluntarily submitted to the jurisdiction of this court.

4. On or about July 17, 2004, CitiCapital, allegedly acting pursuant to a preferred ship mortgage ["note"], arrested the vessels NAKNEK SPIRIT, and the EGEGIK SPIRIT ["the vessels"].

5. When the vessels were arrested Woodbine had paid the note down to about $334,000 and was in arrears on the note in the sum of $43,940.82.

6. As to all causes of action herein pled, the Cross-Complainants have suffered the damages alleged in paragraphs 7-9 below as a further result of, and proximately caused by, CitiCapital's conduct:

7. Woodbine traditionally buys a significant portion of its product after July 17th each year, considered the "Fall Fishery." Without the use of the arrested vessels,

FIRST AMENDED COUNTERCLAIM
-2-                                            Case No. A-04-0147-CI

1  Woodbine missed its traditional Fall Fisheries, and therefore lost profits on the associated
2  products. In addition, Woodbine hired an additional tender (the BRUIN BAY) to do its
3  freight hauling, etc., at an additional expense of $2,000 per day while the vessels remained
4  under arrest. Woodbine paid its crew for a week while CitiCapital's attorney pretended to
5  be negotiating in good faith. Arrangements were made to send the crew home, and
6  CitiCapital interfered with Woodbine's relationship with its crew, and hired them away
7  from Woodbine.

8.   Woodbine lost profits in an amount in the approximate sum as follows:

Average for the past 3 seasons is:

1,432,918 lbs @ .75 recovery = 1,074,688 lbs net @ $1.45/lb. = **$1,558,298**

**Less COSTS**

Fish Cost @ .40/lb = $573,167
Taxes                     22,927

**Tender costs         75,000**
Labor costs            214,937
Package/freight-paid

**NET LOSS            $ 672,267**
Plus tender cost

**Bruin Bay          $  36,000**

TOTAL               $ 708,267

9.   Woodbine suffered an additional loss for the crew that was standing by, as well as additional losses for Kuskokwim as follows. Traditionally, Woodbine purchased in the range of 350,000 – 750,000 lbs of Coho in the Kuskokwim during this time period as well.

Based on this range, average of 500,000 lbs of Coho, the following formula would be: 500,000 lbs @ .75 recovery = 375,000 lbs net @ 1.25/lb. = $468,750.00

Fish Cost @ .25/lb = $125,000

FIRST AMENDED COUNTERCLAIM

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

| | | |
|---|---|---|
| Taxes | 5,000 | |
| Tender Costs (incl) | | |
| Labor (incl) | | |
| Package/freight-paid | | |

**NET LOSS**

**$338,750**   Kuskokwim

### FIRST CAUSE OF ACTION – BREACH OF ORAL CONTRACT

10. Cross-Claimants repeat and reallege each of the allegations contained in paragraphs 1 through 9 of this cross-complaint as if each was more fully set forth herein.

11. On or about July 24, 2004, Woodbine, by and through its representative, Virginia Ferrari, entered into a contract with CitiCapital, by and through its representative Mark Manning whereby, in exchange and in consideration for Woodbine obtaining insurance on the vessels, and making up the arrearages from fish sale proceeds, CitiCapital agreed to release the vessels. Woodbine and CitiCapital, by and through the aforementioned representatives, agreed to these terms.

12. Cross-Complainants have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract.

13. On or about July 25, 2004, CitiCapital breached the contract when it refused to release the vessels, instead demanding additional terms and payments beyond the contract.

14. Cross-Complainants informed CitiCapital, prior to the agreement, that Cross-Complainants needed the vessels to operate its fishing business, and that every day that went by without the vessels being released would cause them to incur tremendous lost profits, costs associated with having a crew standing by, and other losses associated

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

FIRST AMENDED COUNTERCLAIM
-4-                                                                                              Case No. A-04-0147-CI

with an abrupt cessation of operations during what would otherwise be the most lucrative time of the year for Cross-Complainants.

15. As a further result of, and proximately caused by, CitiCapital's breach of contract, Cross-Complainants have suffered consequential damages as a result of the abrupt cessation of operations, in an amount according to proof.

**SECOND CAUSE OF ACTION – BREACH OF ORAL CONTRACT**

16. Cross-Claimants repeat and reallege each of the allegations contained in paragraphs 1 through 15 of this Cross-complaint as if each was more fully set forth herein.

17. On or about July 25, 2004, Woodbine, by and through its representative, Virginia Ferrari, entered into a contract with CitiCapital, by and through its representative Mark Manning whereby, in exchange and in consideration for Woodbine paying the sum of $43,940.82, the total amount of the arrearages, CitiCapital agreed to release the vessels. Woodbine and CitiCapital, by and through the aforementioned representatives, agreed to these terms.

18. Cross-Complainants have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract.

19. On or about July 26, 2004, CitiCapital breached the contract when it refused to release the vessels, instead demanding additional terms beyond the contract.

20. Cross-Complainants informed CitiCapital, prior to the agreement, that Cross-Complainants needed the vessels to operate its fishing business, and that every day that went by without the vessels being released would cause them to incur tremendous lost profits, costs associated with having a crew standing by, and other losses associated

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

FIRST AMENDED COUNTERCLAIM
-5-                                                                          Case No. A-04-0147-CI

with an abrupt cessation of operations during what would otherwise be the most lucrative time of the year for Cross-Complainants.

21. As a further result of, and proximately caused by, CitiCapital's breach of contract, Cross-Complainants have suffered consequential damages as a result of the abrupt cessation of operations, in an amount according to proof.

**THIRD CAUSE OF ACTION – BREACH OF ORAL CONTRACT**

22. Cross-Claimants repeat and reallege each of the allegations contained in paragraphs 1 through 21 of this Cross-complaint as if each was more fully set forth herein.

23. On or about July 26, 2004, Woodbine, by and through its representative, Virginia Ferrari, entered into a contract with CitiCapital, by and through its representative Mark Manning, whereby, in exchange and in consideration for Woodbine making a payment of the sum of $79,487.65, allegedly representing $43,940.82 (principal), $9,866.57, in late fees and $25,660 in interest, and obtaining insurance coverage for the vessel, CitiCapital agreed to release the vessels. Woodbine and CitiCapital, by and through the aforementioned representatives, agreed to these terms.

24. Cross-Complainants have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract.

25. On or about July 26, 2004, CitiCapital breached the contract when it refused to release the vessels, instead demanding additional terms beyond the contract.

26. Cross-Complainants informed CitiCapital, prior to the agreement, that Cross-Complainants needed the vessels to operate its fishing business, and that every day that went by without the vessels being released would cause them to incur tremendous lost profits, costs associated with having a crew standing by, and other losses associated

with an abrupt cessation of operations during what would otherwise be the most lucrative time of the year for Cross-Complainants.

27. As a further result of, and proximately caused by, CitiCapital's breach of contract, Cross-Complainants have suffered consequential damages as a result of the abrupt cessation of operations, in an amount according to proof.

**FOURTH CAUSE OF ACTION – BREACH OF ORAL CONTRACT**

28. Cross-Claimants repeat and reallege each of the allegations contained in paragraphs 1 through 27 of this Cross-complaint as if each was more fully set forth herein.

29. On or about August 1, 2004, Woodbine, by and through its representative, Cory A. Birnberg, entered into a contract with CitiCapital, by and through its representative Mark Manning, whereby, in exchange and in consideration for Woodbine making a payment of the sum of $125,000 and obtaining insurance coverage for the vessels, CitiCapital agreed to release the vessels. Woodbine and CitiCapital, by and through the aforementioned representatives, agreed to these terms.

30. On or about August 5, 2004, Cross-Complainants offered to perform their obligations under the agreement in good faith and unconditionally by tendering the $125,000.00, and submitting proof of obtaining insurance coverage for the vessels, and demanded that CitiCapital perform the obligations on its part by releasing the vessels.

31. Cross-Complainants have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract.

32. On or about August 5, 2004 CitiCapital breached the oral agreement by refusing to release the vessels, instead demanding additional terms beyond the contract.

33. Cross-Complainants informed CitiCapital, prior to the agreement, that Cross-Complainants needed the vessels to operate its fishing business, and that every day that went by without the vessels being released would cause them to incur tremendous lost profits, costs associated with having a crew standing by, and other losses associated with an abrupt cessation of operations during what would otherwise be the most lucrative time of the year for Cross-Complainants.

34. As a further result of, and proximately caused by, CitiCapital's breach of contract, Cross-Complainants have suffered consequential damages as a result of the abrupt cessation of operations, in an amount according to proof.

### FIFTH CAUSE OF ACTION – BREACH OF ORAL CONTRACT

35. Cross-Claimants repeat and reallege each of the allegations contained in paragraphs 1 through 34 of this Cross-complaint as if each was more fully set forth herein.

36. On or about August 6, 2004, Woodbine, by and through its representative, Cory A. Birnberg, entered into a contract with CitiCapital, by and through its representative Mark Manning whereby, in exchange and in consideration for Woodbine making a payment of the sum of $125,000 and obtaining excess insurance coverage for the vessels, CitiCapital agreed to release the vessels. Woodbine and CitiCapital, by and through the aforementioned representatives, agreed to these terms.

37. Cross-Complainants have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract.

38. On or about August 10, 2004 CitiCapital breached the contract by refusing to release the vessels, instead demanding additional terms beyond the contract.

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

FIRST AMENDED COUNTERCLAIM
-8-    Case No. A-04-0147-CI

39. Cross-Complainants informed CitiCapital, prior to the agreement, that Cross-Complainants needed the vessels to operate its fishing business, and that every day that went by without the vessels being released would cause them to incur tremendous lost profits, costs associated with having a crew standing by, and other losses associated with an abrupt cessation of operations during what would otherwise be the most lucrative time of the year for Cross-Complainants.

40. As a further result of, and proximately caused by, CitiCapital's breach of contract, Cross-Complainants have suffered consequential damages as a result of the abrupt cessation of operations, in an amount according to proof.

## SIXTH CAUSE OF ACTION – BREACH OF ORAL CONTRACT

41. Cross-Claimants repeat and reallege each of the allegations contained in paragraphs 1 through 40 of this Cross-complaint as if each was more fully set forth herein.

42. On or about August 10, 2004, Woodbine, by and through its representative, Cory A. Birnberg, entered into a contract with CitiCapital, by and through its representative Mark Manning whereby, in exchange and in consideration for Woodbine making a payment of the sum of $125,000, obtaining excess insurance coverage for the vessels, and submitting a proposed business plan, CitiCapital agreed to release the vessels. Woodbine and CitiCapital, by and through the aforementioned representatives, agreed to these terms.

43. Cross-Complainants have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract.

44. On or about August 12, 2004 CitiCapital breached the contract by refusing to release the vessels, instead demanding additional terms beyond the contract.

FIRST AMENDED COUNTERCLAIM
-9-                                                             Case No. A-04-0147-CI

45. Cross-Complainants informed CitiCapital, prior to the agreement, that Cross-Complainants needed the vessels to operate its fishing business, and that every day that went by without the vessels being released would cause them to incur tremendous lost profits, costs associated with having a crew standing by, and other losses associated with an abrupt cessation of operations during what would otherwise be the most lucrative time of the year for Cross-Complainants.

46. As a further result of, and proximately caused by, CitiCapital's breach of contract, Cross-Complainants have suffered consequential damages as a result of the abrupt cessation of operations, in an amount according to proof.

**SEVENTH CAUSE OF ACTION – BAD FAITH BREACH OF CONTRACT**

47. Cross-Claimants repeat and reallege each of the allegations contained in paragraphs 1 through 46 of this Cross-complaint as if each was more fully set forth herein.

48. CitiCapital took advantage of the arrest of the vessels to extract more money from Cross-Complainants than was due for arrearages of $43,940.82, asking for $79,487.65 and then $125,000, before the note was accelerated, constantly increasing the amount that it would take, with no relational relationship to the amount of the arrearages actually due on the note. Cross-Complainants were desperate to recommence fishing operations, and had no choice but to agree to CitiCapital's increasingly exorbitant demands.

49. CitiCapital's conduct in failing to honor each of the aforementioned contracts, was willful, malicious, and oppressive, and done with the intent to permanently deprive Cross-Complainants of their property, and/or with a conscious disregard of the risk that such conduct, could cause a cessation of Cross-Complainant's business operations.

FIRST AMENDED COUNTERCLAIM
-10- Case No. A-04-0147-CI

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

50. Cross-Complainants seek punitive damages against CitiCapital for the conscious and willful deprivation of their property.

### EIGHTH CAUSE OF ACTION – WRONGFUL FAILURE TO RELEASE VESSELS

51. Cross-Claimants repeat and reallege each of the allegations contained in paragraphs 1 through 50 of this Cross-complaint as if each was more fully set forth herein.

52. When the vessels were arrested on July 17, 2004, Woodbine had paid the note down to about $334,000 and was in arrears on the note in the sum of $43,940.82.

53. Cross-Complainants informed CitiCapital, prior to any negotiations, that Cross-Complainants needed the vessels to operate its fishing business, and that every day that went by without the vessels being released would cause them to incur tremendous lost profits, costs associated with having a crew standing by, and other losses associated with an abrupt cessation of operations during what would otherwise be the most lucrative time of the year for Cross-Complainants.

54. On or about July 24, 2004, Cross-Complainants agreed to obtain insurance coverage and pay arrearages from the proceeds of fish sales in exchange for CitiCapital's release of the vessels. CitiCapital refused to honor the agreement.

55. On or about July 25, 2004, Cross-Complainants agreed to pay arrearages up front in exchange for CitiCapital's release of the vessels. CitiCapital refused to honor the agreement.

56. On or about July 26, 2004, Cross-Complainants agreed to pay $79,487.65 and obtain insurance coverage in exchange for CitiCapital's release of the vessels. CitiCapital refused to honor the agreement.

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

FIRST AMENDED COUNTERCLAIM
-11-                                                    Case No. A-04-0147-CI

57.	On or about August 1, 2004, Cross-Complainants agreed to pay $125,000 and obtain insurance coverage in exchange for CitiCapital's release of the vessels. CitiCapital refused to honor the agreement.

58.	On or about August 6, 2004, Cross-Complainants agreed to pay $125,000 and obtain excess insurance coverage in exchange for CitiCapital's release of the vessels. CitiCapital refused to honor the agreement.

59.	On or about August 6, 2004, Cross-Complainants agreed to pay $125,000, obtain excess insurance coverage, and submit a proposed business plan in exchange for CitiCapital's release of the vessels. CitiCapital refused to honor the agreement.

60.	Cross-Complainants are informed and believe that the terms of these agreements were not properly conveyed from counsel for CitiCapital to the correct decisions-maker at CitiCapital, and that CitiCapital was acting in bad faith. Cross-Complainants are informed and believe that CitiCapital had no intention of ever releasing the vessels, despite being fully aware that the income, profitability, and ongoing business of Woodbine depended upon the functioning of the tenders in buying fish, and that once the tenders were arrested by CitiCapital, Woodbine could not buy any fish and was essentially out of business.

61.	Based upon either the surveys of Cross-Complainants, already on file in this action, or the surveys produced by CitiCapital, the arrest of one vessel was sufficient security for the amount of the arrearages of $43,940.82. The failure of CitiCapital to release both vessels was therefore wrongful and in bad faith.

62.	The failure to release both vessels for the outstanding obligations of Cross-Complainants was wrongful, malicious, and designed to harm Cross-Complainants and each of them, and was done with conscious disregard of the risk

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

FIRST AMENDED COUNTERCLAIM
-12-    Case No. A-04-0147-CI

that it could result in the cessation of Woodbine's entire fishing operations and/or with intent to harm Cross-Complainants.

63. Concurrently with negotiating and making the first four aforementioned agreements, CitiCapital was drafting a First Amended Complaint, wherein CitiCapital accelerated the entire balance due on the note, and CitiCapital therefore never intended to act in good faith in honoring those agreements.

64. As a further result of, and proximately caused by, CitiCapital's wrongful failure to release the vessels, Cross-Complainants have suffered consequential damages as a result of the abrupt cessation of operations, in an amount according to proof.

65. As a result of CitiCapital's wrongful failure to release the vessels, Cross-Complaints have been damaged in a sum in no less than $1.2 million in lost profits, crew fees, and charges.

66. Cross-Complainants seek punitive damages against CitiCapital for the conscious and willful deprivation of their property.

**NINTH CAUSE OF ACTION – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

67. Cross-Claimants repeat and reallege each of the allegations contained in paragraphs 1 through 66 of this Complaint as if each was more fully set forth herein.

68. Cross-Complainants are informed and believe that the terms of these agreements were not properly conveyed from counsel for CitiCapital to the correct decisions-maker at CitiCapital, and that CitiCapital was acting in bad faith.

69. Cross-Complainants are informed and believe that CitiCapital had no intention of ever releasing the vessels, and that during negotiations and the first four agreements to release the vessels, CitiCapital was drafting a First Amended Complaint,

FIRST AMENDED COUNTERCLAIM

wherein CitiCapital accelerated the entire balance due on the note. CitiCapital therefore never ever intended to release the vessels as agreed, or act in good faith pursuant to its agreements.

70. The actions of CitiCapital, set forth hereinabove, in consciously and deliberately acting unfairly and frustrating the agreed common purpose of the contracts and disappointing the reasonable expectations of Cross-Complainants, constitute a violation of the implied covenant of good faith and fair dealing implied in the underlying note and in each of the contracts alleged above.

71. CitiCapital's actions, in violating the implied covenant of good faith and fair dealing, have directly and proximately caused Cross-Complainants to suffer damages in an amount according to proof.

**WHEREFORE**, Cross-Complainants pray for relief from CitiCapital, as follows:

1. For general damages in a sum within the jurisdiction of this Court and in an amount to be determined at trial;

2. For special damages including but not limited to the cost of goods and services Cross-Complainants became liable for as consequence of CitiCapital's conduct, and other incidental and consequential damages, in an amount to be determined at trial;

3. For lost profits in an amount to be determined at trial;

4. For punitive damages in an amount according to proof;

5. For other damages not yet ascertained, in an amount to be determined at trial;

6. For costs of suit herein incurred and prejudgment interest;

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

FIRST AMENDED COUNTERCLAIM
-14-   Case No. A-04-0147-CI

1      7.    For all such additional relief as the Court may deem just and proper.

2  Dated: 17 April 2006                              BIRNBERG & ASSOCIATES

By: __s/Cory Birnberg____
    Cory A. Birnberg

BIRNBERG & ASSOCIATES
CORY A. BIRNBERG
703 Market Street Suite 600
San Francisco, California 94103
Telephone Number: (415) 398-1040
Facsimile Number: (415) 398-2001
Email: birnberg@birnberg.com
California State Bar No. 105468
Attorneys for Cross-Complainants

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

FIRST AMENDED COUNTERCLAIM
-15-                        Case No. A-04-0147-CI